FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC. *as Broadcast Licensee of the April 12, 2014 Manny Pacquiao v. Timothy Bradley, II WBO Welterweight Championship Fight Program*, <br><br>*Plaintiff*, <br><br>v. <br><br>MOLINA & REYES ENTERPRISES LLC d/b/a CLUB CARIBE and ORLANDO EFRAIN MOLINA d/b/a CLUB CARIBE, <br><br>*Defendants*. | § § § § § § § § § § § § § § § §  Civil Action No.  SA-17-CV-278-XR |

## ORDER

On this date, the Court considered Plaintiff's Motion for Default Judgment. Docket no. 10. After careful consideration, the Court will GRANT Plaintiff's Motion for Default Judgment.

## BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("Plaintiff") is a broadcast license company which was "exclusively authorized to sub-license the closed-circuit telecast" of the Manny Pacquiao v. Timothy Bradley, II WBO Welterweight Championship Fight Program, including preliminary bouts, scheduled for April 12, 2014 (the "Event"). Docket no. 1 at 3. The Event could be legally exhibited by a commercial establishment only by contractual authorization from Plaintiff. *Id.* Transmission of the Event was via satellite, and electronically coded (or "scrambled") to prevent unauthorized access. *Id.* The only way to clearly telecast the Event was with electronic decoding equipment. *Id.* Establishments receiving contractual authorization from Plaintiff

1

would receive "the electronic decoding capability and/or satellite coordinates necessary to receive the signal" which allows clear broadcasting of the Event. *Id.* at 4.

There are two defendants in this case. Defendant Molina & Reyes Enterprises LLC, d/b/a Club Caribe ("Molina & Reyes"); and Defendant Orlando Efrain Molina, a/k/a Orlando E. Molina, d/b/a Club Caribe ("Molina") (collectively "Defendants"). *Id.* at 1. On the date of the Event, Molina owned and/or managed Club Caribe, located at 10319 Perrin Beitel Rd., San Antonio, TX 78217 (the "Establishment"). *Id.* at 1–2. Molina & Reyes is the limited liability company that operates Club Caribe, with its principal place of business at 379 Covina Ave., San Antonio, TX 78218. *Id.* Although access to the Event was available to Defendants by authorized means, Plaintiff alleges Defendants, without contractual authorization from Plaintiff, willfully intercepted or received an interstate satellite communication of the Event, or assisted in such. *Id.* at 4. After interception or reception, Defendants allegedly transmitted or otherwise divulged said communication to patrons within the Establishment, or assisted in so doing. *Id.*

Plaintiff claims damages resulted from Defendants' willful misappropriation of the Event and infringement on Plaintiff's exclusive rights. *Id.* at 4. Defendants "avoid[ed] proper payment to Plaintiff" and by allowing patrons to avoid viewing the Event "at a commercial establishment . . . properly licensed and authorized" to exhibit the Event, prevented other potential payments to Plaintiff. *Id.*

## PROCEDURAL HISTORY

On April 5, 2017, Plaintiff filed its Original Complaint. Docket no. 1. Summons was issued and Plaintiff filed a return of service indicating that, on May 16, 2017, service documents were left at Molina's dwelling with a resident of suitable age and discretion. Docket no. 5. An answer was due June 6, 2017, though Defendant failed to answer or otherwise defend. On

July 6, 2017, Plaintiff moved for substitute service on Molina & Reyes Enterprises LLC by and through the Texas Secretary of State.  Docket no. 6.  Plaintiff's Motion to Substitute Service was granted on July 11, 2017.  Docket no. 7.  The substituted service was returned as executed on July 19, 2017, and Defendant failed to answer or otherwise defend.  Docket no. 8.  Plaintiff filed motions for Entry of Default and Default Judgment on September 5, 2017.  Docket no. 9, 10.  On September 6, 2017, the clerk made entry of default.  Docket no. 11.  Now before the Court is Plaintiff's Motion for Default Judgment.

## STANDARD OF REVIEW

Rule 55(a) provides default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  FED. R. CIV. P. 55(a).  However, "a movant is not entitled to a default judgment as a matter of right" even where the non-movant fails to plead or defend.  *Bloom v. Memorial Hermann Hosp. Sys.*, 653 Fed. App'x 804, 805 (5th Cir. 2016) (per curiam) (citing *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).  "[I]n considering any motion for default judgment, a court must examine jurisdiction, liability, and damages."  *Labaty v. UWT, Inc.*, No. SA-13-CV-389-XR, 2016 WL 1737145, at *1 (W.D. Tex May 2, 2016).  The Court will consider each in turn.

## LAW & ANALYSIS

**I.   JURISDICTION**

The Court has subject-matter jurisdiction over "Anti-Piracy" claims involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and 605.  The Court finds it has subject-matter jurisdiction over this case.

The Federal Rules provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court

is located or where service is made." FED. R. CIV. P. 4(e)(1).  A business entity may be served by delivery to a registered agent under FED. R. CIV. P. 4(h)(1)(B), or may utilize the state law procedures prescribed by Rule 4(e)(1).  *See* FED. R. CIV. P. 4(h)(1)(A).  Service of a business entity via the Texas Secretary of State is authorized by Texas law where "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity[.]"  TEX. BUS. ORG. CODE § 5.251(1)(B).  A individual defendant may be served by leaving service documents at the defendant's "dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]"  FED. R. CIV. P. 4(e)(2)(B).

Here, Plaintiff filed suit April 5, 2017, and on May 16, 2017, Molina was served by leaving a copy of the summons and complaint with a co-resident of suitable age and discretion.  Docket no. 5.  This method satisfied the requirements for serving Molina.  Molina & Reyes, the limited liability company, was served with substitute service by and through the Texas Secretary of State on July 19, 2017, under the authority of Rule 4(h).  *See* FED. R. CIV. P. 4(h)(1)(A); *see also* FED. R. CIV. P. 4(e)(1).  Docket no. 8.  Accordingly, the Court finds proper service and that it has personal jurisdiction over the parties.

## II.   LIABILITY

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that

are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller et al., FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance." *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for assessing a claim's sufficiency is that the claims stated be plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009) (recognizing *Twombly*'s abrogation of the *Conley* no-set-of-facts test for assessing the sufficiency of allegations in a complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The assessment is context specific, and courts may rely on "judicial experience and common sense." *Id.* at 679. The purpose of this inquiry is to ensure the complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In this case, Plaintiff's Original Complaint relates to the piracy of satellite communications under the Communications Act, 47 U.S.C. § 605. *See DirectTV, Inc. v. Webb*,

545 F.3d 837, 844 (9th Cir. 2008) (explaining communications protected by § 605 include satellite television signals). While Plaintiff's Original Complaint seeks damages under § 553 and § 605, Plaintiff moves for default judgment under § 605, as "[t]he transmission of the Event originated via satellite." *Compare* Docket no. 1 at 5, *with* Docket no. 10 at 4.

Unauthorized interception or receipt and subsequent dissemination of satellite communications is prohibited. *See* 47 U.S.C. § 605 (prohibiting not only unauthorized interception or receipt but also "[u]nauthorized publication or use of communications" so acquired). Plaintiff's Original Complaint alleges Defendants violated § 605 "willfully and with the express purpose and intent to secure a commercial advantage and private financial gain." Docket no. 1 at 4.

Plaintiff states Defendants never secured authorization nor made any payments to Plaintiff for the legal right to broadcast the Event as a sub-licensee. "Defendants misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper payment to Plaintiff." *Id.* The date of the Event, an auditor hired by Plaintiff "paid a $5.00 cover charge to enter" the Establishment and observed the Event being broadcast to approximately twenty-six patrons. Docket no. 10 at 4; *see id.* at Ex. A-2. These facts form a substantive and sufficient basis for holding the Defendants acquired the Event without authorization and subsequently disseminated it.

For the reasons above, the Court concludes Plaintiff states a viable claim alleging violations of the Act, sufficient to provide Defendants "fair notice" of what the claims are and the grounds upon which they rest. *See Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's factual allegations, admitted as true by Defendants' default, provide a sufficient basis for relief under 47 U.S.C. § 605.

### III.   DAMAGES

Section 605 contains three damage provisions relevant to this case.  First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."  47 U.S.C. § 605(e)(3)(C)(ii).  Finally, § 605 mandates the recovery of costs and attorney's fees to a prevailing plaintiff.  47 U.S.C. § 605(e)(3)(B)(iii).

#### a.  Statutory Damages Under Section 605(e)(3)(C)(i)(II)

Plaintiff seeks $10,000 in statutory damages, premised on lost licensing fees and compensation for being deprived of the value, benefits, and profits that may have been realized, but for Defendants' piracy of the Event.  As Plaintiff notes in its brief, lost licensing fees are a mere baseline in assessing statutory damages.  *See Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (explaining how damages of mere broadcast cost would not incentivize statute compliance).  This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast.  *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit).  This "per-patron" approach is not uncommon in previous § 605 cases.  *See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages").  Here, Plaintiff submitted the affidavit of Angel Martinez, an auditor who was present at the Establishment on the date of the Event, which states there were approximately

7

twenty-six patrons present and viewing the Event. Docket no. 10, Ex. A-2. According to the submitted "Rate Card" (used to calculate sub-licensing fees based on venue capacity), a commercial establishment with a venue range of 1–100 would be charged $2,200 for the legal right to broadcast the Event. *Id.* at Ex. A-3. This Court has previously found trebling the fee that would have been required to legally license an event to the number of attending patrons to be a just assessment of damages. *See, e.g.*, *Tejada*, 2014 WL 869218, at *2 (awarding "three times the amount of the legal sub-license fee"). This multiplier accounts for "money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). In this case, a trebling of the $2,200 fee is $6,600; therefore, the Court awards $6,600 in statutory damages.

### b. Damages for Willfulness Under Section 605(e)(3)(C)(ii)

Defendants, by default, admit to violating § 605 "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Defendants' charging a fee to enter the Establishment is evidence of willfulness, commercial advantage, and financial gain. *See Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 342 (S.D.N.Y. June 11, 2009); *see also Garden City Boxing Club, Inc. v. Sacks*, No. B-07-97, 2008 WL 1711478, at *2 (S.D. Tex. Apr. 10, 2008) (holding a cover charge evinced the "purpose of direct or indirect commercial advantage").

While an award of additional damages for a willful act should be sufficient to deter such piracy in the future, the Court is mindful that such an award should not be so high as to drive the actor out of business. *See Tejada*, 2014 WL 869218, at *2 n.4; *see also Garcia*, 546 F. Supp. 2d

at 386.  The Court finds damages for a willful violation in the amount of $5,000 appropriate based on the Establishment's approximated twenty-six patrons on the night of the Event.

### c. Recovery of Costs and Attorney's Fees

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees.  *See* 47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff seeks a one-third attorney's fee contingent on the recovery.  Alternatively, Plaintiff seeks computation of damages using the *lodestar*-fee method, which "is applied by multiplying the number of hours reasonably expended by an appropriate rate in the community for the work at issue."  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002)).  The *lodestar*-fee method has a strong presumption of reasonableness.  *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999).  The affidavit of David M. Diaz establishes an estimated total fee of $1,000, and attorney's fees are awarded in that amount.  The Court declines to award attorney's fees for potential post-trial and appellate services.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is GRANTED.  The Court awards Plaintiff $11,600 in damages, plus $1,000 in attorney's fees, totaling $12,600.  A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58.  Plaintiff is also entitled to costs, and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen (14) days of the entry of Judgment.  Local Rule 54.

SIGNED this 18th day of October, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE